Paul N. BORMAN, Petitioner and Appellant,

v.

A. L. TSCHIDA, Director of Safety Responsibility Division, representing Walter R. Hjelle, State Highway Commissioner, Respondent.

No. 8545.

Supreme Court of North Dakota.

Oct. 29, 1969.

Lanier & Knox, Fargo, for appellant.

Helgi Johanneson, Atty. Gen., and Joseph A. Vogel, Jr., Sp. Asst. Atty. Gen., Bismarck, for respondent.

ERICKSTAD, Judge.

The basic issue in this case is whether Highway Patrolman Gerald Olson, in arresting Mr. Paul Borman on September 28, 1968, had reasonable grounds to believe that Mr. Borman had been driving a motor vehicle upon the public highway while he was under the influence of intoxicating liquor.

Under the provisions of N.D.C.C. § 39–20–01, the Implied Consent Law, any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of ch. 39–20, to a chemical test or tests of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood.

Section 39–20–01 further provides that the test or tests shall be administered at the direction of a law enforcement officer "only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor."

The pertinent part of § 39–20–04, providing for the revocation of a person's driver's license upon his refusal to submit to chemical testing, reads:

> If a person under arrest refuses to submit to chemical testing, none shall be given, but the state highway commissioner, upon the receipt of a sworn report of the law enforcement officer, forwarded by the arresting officer within five days after the refusal, showing that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months; * * *.

North Dakota Century Code.

By way of background information it should be noted that following Mr. Borman's refusal to submit to a breath test, the highway patrolman, within the time required by law, forwarded to the State Highway Commissioner the prescribed sworn report designated in the record be-

fore us as Exhibit A. In it Patrolman Olson gives the following reasons, actions, and circumstances constituting grounds which caused him to believe that the petitioner had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor: "weaving on road, wouldn't stop till I blew siren, never seen red spot light in back window for 1½ miles then stopped after I blew siren but stopped in center of exit off I-94, subject could not walk straight line without side stepping. Could smell mild odor of alcohol beverage."

Following receipt of the report the Commissioner revoked Mr. Borman's driving privileges for six months. Thereafter Mr. Borman demanded and received an administrative hearing, pursuant to § 39-20-05. At the hearing before Mr. Joseph A. Vogel, Jr., Special Assistant Attorney General, as agent for the State Highway Commissioner, testimony was submitted on behalf of both the State and Mr. Borman. After all of the testimony was submitted, the hearing officer concluded that the revocation of Mr. Borman's driver's license should be sustained.

Thereafter Mr. Borman appealed to the district court, and upon a hearing based on the record before the administrative officer, the district court affirmed the decision of the administrative officer. It is from the order executed by the District Judge for the First Judicial District affirming that decision that this appeal is taken.

Section 39-20-05 provides that the scope of review of the administrative hearing shall cover the issues of whether a law enforcement officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor; whether the person was placed under arrest; and whether he refused to submit to the test or tests. The petitioner asserts in his main brief that the sole question for

determination in this case, because of a stipulation entered into between the parties, is whether there was reasonable cause at the time of the arrest for the officer to believe that the petitioner was under the influence of intoxicating liquor.

Section 39-20-06, relating to judicial review, provides that the court shall affirm the decision of the Commissioner or his authorized agent unless it finds the evidence insufficient to warrant the conclusion he reached.

We do not believe that our review is any broader than that of the trial court, and thus, as we stressed in the recent case of George E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N. W.2d 104 (N.D.1969), an appeal from a decision of another administrative agency, judicial review of findings of fact and expert judgments of an administrative agency acting within its statutory authority is extremely limited.

■ Accordingly, if there is substantial evidence to support the conclusion of the State Highway Commissioner or his agent, we must affirm his decision, under the provisions of the Implied Consent Law.

It is interesting to note that in 1968 the Supreme Court of New Jersey, in a case involving not an implied consent act but a decision of the director of motor vehicles suspending a person's driver's license upon a finding that he operated his automobile in a careless manner, overruled its Appellate Court Division, saying that the majority of that court improperly weighed the evidence in the case, thereby exceeding the appellate court's limited function of determining whether the administrative finding was based on substantial evidence in the record as a whole. David v. Strelecki, 51 N.J. 563, 242 A.2d 371 (1968), cert. denied 393 U.S. 933, 89 S.Ct. 291, 21 L.Ed.2d 269.

As Mr. Borman contends that the patrolman did not have reasonable cause to believe that the petitioner was driving a motor vehicle upon a public highway while

under the influence of intoxicating liquor, the testimony relative to this issue given at the administrative hearing must be reviewed to determine whether there is substantial evidence to support the administrator's decision.

Patrolman Olson testified that on September 28, 1968, at 11:50 p. m., he checked on a locked car which was parked on the exit of Interstate Highway 29 where it enters Interstate Highway 94 west of Fargo. While he was parked behind and slightly to the left of the locked car, with the motor of his patrol car running, two vehicles approached from the west. Part of his testimony follows:

A. * * * I was waiting for the check to come in on the radio, and two cars approached from the west, and the first one glided over to the left of the east bound lane of the highway—I-94—around me, but the car I checked on and the car that I was sitting directly behind this car * * *. And when the second car came along, I noticed it veered to the left real sharp and I heard squealing of tires, I thought it quite funny because the visibility to the left was clear enough so that he could see me sitting there because I had the flashers on my patrol unit going, but not the top light. So when his tires squealed, I thought there must be something wrong, so I followed him for a short distance, he seemed to have a five foot sway back and forth on the road in his lane, so I put the red spot light in the back window of his car, and flicked a couple times and received no response. I drove up beside him and used the fender light and still no response, so then I turned the siren on and he droye for quite a while and then at this point we were at the exit of 94 and 81, we exit right of 94 onto U.S. 81 and there the vehicle stopped on the exit onto 81 in the middle of the concrete road.

When asked approximately how far he had driven his vehicle from the time he had begun following the petitioner and using

the lights until the petitioner stopped, he said, "at least a mile and a half."

Part of the patrolman's testimony relative to what happened after he asked the petitioner to step out of his car follows:

A. * * * I suspected he was drunk when I followed him, especially when he wouldn't stop. So I got him out of the car, and when he got out he held his hand on the back of his fender all the time to get his balance, then I talked to him a little while about the way he had been, and what he had done, then I took him back to my car. He walked on the right side of my car, all the time he walked by the car he kept his hand on the fender so that he had himself balanced. I had him walk a line.

The patrolman further testified that the petitioner's speech was slurred and that he had a "slick tongue." (It was contended on oral argument that the "slick tongue" was an error in transcribing the testimony and that *slick* should read *thick*.) When asked to define the term, the patrolman said: "He didn't talk like a normal person, it seemed like he had to think before he talked to get his words to come out right."

The patrolman said that when the petitioner was asked to walk heel-to-toe in a straight line and then turn around and return, he took an extra step when he turned.

The patrolman also said that when the petitioner was asked to display his driver's license, he took a bundle of cards out of his pocket, and although the driver's license was on the top of the bundle, he was unable to find it after going through the bundle about three times. The testimony reads:

A. I asked to see his driver's license and he was mumbling to some extent, he got his driver's license out of his pocket, he has a bundle of cards in there, his driver's license was on top of this pile, and he looked at it and didn't recognize it, and then I was pretty sure that he was under the influence—there was

no question in my mind—so, finally he got disgusted after he went through all these cards about three times, so he threw the whole works on the dash and said "you find it." I reached up on the dash and picked out the right one right away.

In regard to the odor of alcohol, Patrolman Olson, under cross-examination, gave the following testimony:

Q. * * * Then you also have in here [exhibit A], "could smell a mild odor of alcohol" correct?

A. Right.

Q. It certainly wasn't strong, was it?

A. No.

The petitioner contends that it would be difficult to imagine a set of facts constituting any less cause for making an original stop of a motor vehicle and any less reason for making an arrest after a stop.

He asserts that the patrolman could not have followed the petitioner for a mile and a half, inasmuch as the distance between the place where the patrol car was parked and the place where the petitioner's car was brought to a stop is only a mile and a half, and some time would be required in accelerating from a stopped position to one in which the patrol car was closely following the petitioner's car.

It is his contention that the officer could not tell which of the two cars which passed him while he was parked behind the locked car on the exit of Highway 29 was the one whose tires squealed.

The petitioner asserts, first of all, that up to the time the highway patrolman stopped him, the patrolman had no reasonable cause for presuming that the driver of either of the two cars which passed while he was parked was under the influence of intoxicating liquor. From this we assume that the petitioner believes that the officer had to have reasonable cause to believe that the petitioner was driving while under the influence of intoxicating liquor before he could stop the petitioner.

■ To the best of our knowledge, the Supreme Court of the United States has not ruled directly on this question, but a number of state appellate courts have held that an officer may stop a pedestrian or motorist under circumstances short of probable cause for arrest. For a recent intermediate appellate court decision so holding, see People v. Perez, 243 Cal.App. 2d 528, 52 Cal.Rptr. 514 (1966).

In State v. Carpenter, a decision of the Supreme Court of Nebraska, not concerning an implied consent law or an appeal from an administrative decision but a case in which a defendant was prosecuted under two informations, one charging possession of burglary tools, and the other, breaking and entering, the court pointed out that less cause is required to stop a person for investigation than for an arrest. We quote:

Defendant is laboring under the misapprehension that the same rule on probable cause applies when a person is merely stopped and questioned as when he is arrested. Defendant's approach presents a clash of interest between the protection of the public and the right of an individual. His premise is false and would cripple law enforcement. To require that a police officer must have probable cause for arrest before he can stop and question a person would extend the Constitution beyond the realm of reasonable intendment. By so holding, we would be unduly limiting police power for the mere sake of limitation. To do so would emasculate crime prevention and render peace officers impotent and useless. Individual rights on occasion must give way to the rights of society. This is the very purpose of law —to restrict the rights of the individual to provide protection for society. It is not possible to ignore the fact that police officers are charged with the duty to

prevent crime as well as to detect it. Often an immediate inquiry is an indispensable attribute to the prevention and discovery of crime. This is particularly true where a moving vehicle is involved. Then, time is of the essence. Unless the vehicle is stopped and the occupants identified, it may be impossible to connect them to the area if a crime is later uncovered.

State v. Carpenter, 181 Neb. 639, 150 N.W.2d 129, 133 (1967), cert. denied 392 U.S. 944, 88 S.Ct. 2288, 20 L.Ed.2d 1406.

For a discussion of the distinction between stopping for "investigation" and making of an "arrest," see Comments, Interference with the Right to Free Movement: Stopping and Search of Vehicles, 51 Cal.L.Rev. 907, 909 (1963).

The Nebraska court in *Carpenter* supported its views by a quotation from Justice Burton, as contained in United State v. Bonanno, as follows:

"It is only by alertness to proper occasions for prompt inquiries and investigations that effective prevention of crime and enforcement of law is possible  *  *  *."

United States v. Bonanno, 180 F.Supp. 71, 89 (S.D.N.Y. 1960), quoting Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

(It should be noted that *Bonanno,* written by Judge Irving R. Kaufman, was reversed by the Circuit Court of Appeals in United States v. Bufalino, 285 F.2d 408 (2d Cir. 1960), but on grounds other than those relevant to this issue.)

The Supreme Court of Nebraska has reaffirmed the position it took in *Carpenter* in the case of State v. Smith, 181 Neb. 846, 152 N.W.2d 16, 21 (1967).

It is our view, therefore, that it is immaterial whether the highway patrolman in this case had reasonable cause to arrest the petitioner at the time he stopped him, and that the implied consent statute is complied with if at the time of the arrest the officer had reasonable grounds to believe that the petitioner had been driving a motor vehicle upon the public highway while under the influence of intoxicating liquor. We think that the patrolman had sufficient cause to stop the petitioner for purposes of investigation.

However, it is the petitioner's contention that even from what the highway patrolman learned following the stopping of the petitioner and before the petitioner's arrest, the patrolman still had insufficient cause to arrest him. The petitioner's view is that he satisfactorily passed the tests given by the highway patrolman, and that therefore there was nothing further from which the highway patrolman could have acquired reasonable cause.

He contends that a person not under the influence of intoxicating liquor, turning while taking the heel-and-toe test, might take an extra step, and that it would not be unusual for a person in taking the finger-to-nose test to touch the bridge of his nose, as the petitioner did, rather than the tip of the nose, as the highway patrolman requested.

He asserts further that the testimony of the highway patrolman that the petitioner stopped his car in the middle of the concrete of the exit from Highway 94 to Highway 81 and that the patrolman stopped his car about fifteen feet to the rear of the petitioner's car and two feet further to the left is incredible, contending this would mean that the exit was thereby totally blocked as to the left side of the road and that there would barely be enough room on the right side for a car to squeeze by.

This analysis, however, does not take into consideration that on the edge of the concrete there is an asphalt shoulder of four feet. Although from the standpoint of traffic safety it may not have been a prudent practice for the patrolman to park as he says he did, we cannot say there-

from that what he asserts to have taken place clearly did not take place.

■ The petitioner asserts that exhibit 1, a charge slip covering the petitioner's evening at the High Ten Steak House, showing two complete dinners and one drink each before dinner and one drink each after dinner for the petitioner and his wife on the evening of September 28, and the testimony of the hostess at the steak house to the effect that they had no more drinks than what was indicated on the exhibit, proved that the petitioner was not under the influence of intoxicating liquor when stopped or arrested, the petitioner and his wife having spent from about 9:00 or 9:15 p. m. until about 11:20 or 11:30 p. m. at the steak house. This testimony may be relevant if and when the petitioner is tried for the offense of driving a motor vehicle while under the influence of intoxicating liquor, but it is not pertinent in determining the issue in this case, which is whether the highway patrolman at the time he arrested the petitioner had probable cause to believe that the petitioner was driving upon a public highway of the state of North Dakota while under the influence of intoxicating liquor.

In stressing the need for holding law enforcement personnel to very high standards of reasonable cause in making arrests, because arrests under the Implied Consent Law may jeopardize a person's privilege to drive an automobile and thus affect him deeply, the petitioner refers us to Colling v. Hjelle, 125 N.W.2d 453 (N.D.1963). He asserts that *Colling* holds that even probable cause was insufficient to make an arrest lawful when the arrested person was subsequently acquitted by a court of law.

However, we point out that subsequent to *Colling* the legislature amended § 29–06–15(1), relating to arrest without a warrant by a peace officer, so that if the issue present in *Colling* were to arise now, the result would be that an acquittal of the criminal charge would have no bearing up-

on the proceeding before the Highway Commissioner for revocation of a driver's license under the Implied Consent Law. For recent relevant decisions of other courts, see: State, Dept. of Highways v. Styrbicki, 169 N.W.2d 225 (Minn.1969); and Strelecki v. Coan, 97 N.J.Super. 279, 235 A.2d 37 (1967).

For recent decisions involving facts somewhat similar to the facts in this case, wherein probable cause was found to exist in the first case, and wherein the evidence was found sufficient to support a verdict of guilty in the second case, both cases involving charges of driving while under the influence of intoxicating liquor, see People v. Krueger, 99 Ill.App.2d 431, 241 N.E.2d 707 (1968); and People v. Miller, 101 Ill. App.2d 361, 243 N.E.2d 277 (1968).

■ We will not discuss herein all of the assertions made by the petitioner in support of his contention that the patrolman lacked probable cause to arrest him, but we have considered all of them and found them to be unpersuasive. The weight of the evidence being for the administrative officer to determine, we do not believe that the inconsistencies in the patrolman's testimony, some of which are irrelevant to the issue, justify our reversal of the administrative officer's decision. Accordingly, applying the test that we as a reviewing court must affirm the decision of the Highway Commissioner under the Implied Consent Law when there is substantial evidence to support it and without substituting our judgment for that of the Commissioner or his agent, we conclude that there is substantial evidence to support the decision of the Commissioner or his agent and the decision of the district court that the patrolman had reasonable cause to believe at the time he arrested the petitioner that the petitioner was driving a motor vehicle upon a public highway while under the influence of intoxicating liquor. The abrupt turning of the wheels, the squealing of the tires, the weaving on the highway, the failure to respond to the

lights, the mild odor of alcohol, the difficulty of petitioner's speech, the petitioner's reliance on the car for his balance, the petitioner's inability to find his driver's license, the petitioner's difficulty in performing the physical tests—when added together—justified the patrolman in concluding that the petitioner had been driving a motor vehicle while he was under the influence of intoxicating liquor and thus constituted probable or reasonable cause for the petitioner's arrest.

Should it be contended that because the patrolman did not give any of the warnings specified in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), he could not use what he learned from the physical tests, i. e., finger-to-nose, heel-to-toe, etc., in determining reasonable cause, reference is made to People v. Krueger, *supra*, 241 N.E.2d 710, and to City of Piqua v. Hinger, 15 Ohio St.2d 110, 238 N.E.2d 766, 767–768, 44 Ohio 2d 81, cert. denied, 393 U.S. 1001, 89 S.Ct. 484, 21 L.Ed.2d 466.

On oral argument, without previous complaint at any stage of the proceedings and without reference thereto in the petitioner's main brief on appeal, counsel for the petitioner asked this court to note that the same person, Mr. Vogel, who acted as agent of the Highway Commissioner at the administrative hearing, appeared as counsel for the Commissioner in the district court and in the Supreme Court. Without pointing out the significance of that statement, he moved that the court consider the fact. Subsequently, both he and Mr. Vogel filed supplementary briefs relative thereto.

In his supplementary brief the petitioner argued as follows:

It goes without saying that Mr. Vogel in this case participated in a triple capacity as prosecutor, advocate and judge in the initial hearing provided under Section 39–20–05. At 1 Am.Jur.2d, Administrative Law, Section 78, page 873, it is stated:

"The danger and unfairness is particularly great in an agency in which there is a high degree of concentration of both prosecution and judicial functions, especially when the functions are combined in the same man. The Courts have pointed out that in such situations the agency members must be zealous in the recognition and preservation of the right to a hearing by *impartial* (emphasis supplied [by the petitioner]) triers of the facts, and such fusion of functions has been subjected to considerable criticism."

Appellant concedes that a mere combination of functions, as such, has not been held to violate constitutional rights or deny due process of law. However, Appellant earnestly and strongly submits that the combination of functions in Mr. Vogel in this specific case bears directly upon the issue as to whether the evidence under the record was sufficient for the State Highway Commissioner to find reasonable cause for arrest. * * *

As the petitioner has conceded, there is no constitutional violation involved. The issue of probable cause has already been carefully considered and determined.

■ Even if there were merit in the petitioner's contention, we could not under long-standing practice consider it. As we recently said in Remmick v. Mills, 165 N.W. 2d 61, 68 (N.D.1968), "The rule is elementary that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from the judgment." Although here we have an order, not a judgment, the same rule applies. See also: Odegaard v. Craig, 171 N.W.2d 133 (N.D.1969).

Notwithstanding that we have discussed herein a number of cases involving criminal prosecutions and what constitutes probable or reasonable cause to arrest under criminal law, we think it should be kept in mind that this is a civil, not a criminal, proceeding (the purpose of the Implied Consent Law being to protect the public while

traveling and not to punish the licensee but merely to prevent him from driving on the highways when he is a hazard to others). Consequently, the rights that the licensee may assert in a criminal proceeding do not apply here. See Blow v. Com'r of Motor Vehicles, 164 N.W.2d 351, 352 (S.D.1969).

Accordingly, for reasons stated in this opinion the order of the district court affirming the decision of the State High-way Commissioner or his duly authorized agent is hereby affirmed.

TEIGEN, C. J., STRUTZ and KNUD-SON, JJ., and HAMILTON E. ENGLERT, District Judge, concur.

The Honorable Wm. L. PAULSON, deeming himself disqualified, did not participate; the Honorable HAMILTON E. ENGLERT, one of the judges of the First Judicial District, sitting in his stead.