2006 ND 137

**Robert JOHNSON, Petitioner and Appellee**

v.

**David A. SPRYNCZYNATYK, Commissioner, North Dakota Department of Transportation, Respondent and Appellant.**

No. 20050449.

Supreme Court of North Dakota.

June 29, 2006.

Jeff L. Nehring, Peterson & Nehring, PLLP, Williston, ND, for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Johnson was arrested for driving under the influence of alcohol. At an administrative hearing, the hearing officer suspended Johnson's driving privileges for 91 days. Johnson appealed to the district court and the district court reversed the suspension and reinstated Johnson's driving privileges. The Director of the North Dakota Department of Transportation (DOT) appealed the district court's decision asking that the district court decision be reversed and the hearing officer's decision reinstated. We affirm.

I

[¶ 2] At the administrative hearing, Officer Ian Wise testified that on August 30, 2005, at approximately 12:43 a.m., he was patrolling in his squad car, traveling at the posted speed limit of 25 miles per hour, when he began to rapidly approach a vehicle driving in front of him. Officer Wise testified he paced the vehicle and determined the vehicle was traveling 8–10 miles per hour in the 25 mile per hour zone. After determining the vehicle's approximate speed and following the vehicle for two blocks, Officer Wise stopped the vehicle based on its slow speed. Officer Wise's testimony indicated he observed no erratic driving or other indications of suspicious behavior from the driver of the vehicle.

[¶ 3] Officer Wise testified that when he approached the vehicle he smelled the odor of alcohol and noticed the driver's eyes were bloodshot. Officer Wise testified the driver, Johnson, admitted to consuming two alcoholic beverages. Officer

Wise testified he had Johnson perform five field sobriety tests and Johnson failed all five. Based on his observations and testing, Officer Wise arrested Johnson for driving under the influence of alcohol.

[¶ 4] The hearing officer found that traveling 8–10 miles per hour in a 25 mile per hour zone is inordinately slow, sufficiently erratic to warrant further investigation, and based on Officer Wise's training and experience, it was reasonable for him to stop Johnson's vehicle. The hearing officer suspended Johnson's driving privileges for 91 days.

[¶ 5] The district court reversed the hearing officer's decision finding the arresting officer did not have the requisite reasonable and articulable suspicion to stop Johnson's vehicle for traveling 8–10 miles per hour in a 25 mile per hour zone. The district court reinstated Johnson's driving privileges. On appeal, the DOT argues Officer Wise had sufficient reasonable and articulable suspicion to stop Johnson's vehicle and therefore the stop was justified and the hearing officer's decision suspending Johnson's driving privileges should be reinstated.

## II

■ [¶ 6] "Judicial review of a decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *Anderson v. Director, N.D. Dept. of Trans.*, 2005 ND 97, ¶ 6, 696 N.W.2d 918. "Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

*Id.* "On an appeal from a district court's ruling on an administrative appeal, our Court reviews the agency's order in the same manner." *Id.* at ¶ 7.

■ [¶ 7] "Under the Fourth Amendment of the United States Constitution, police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot." *See id.* at ¶ 8 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

[¶ 8] This Court has "discussed three situations that provide an officer reasonable and articulable suspicion to stop a vehicle: (1) when the officer relied on a directive or request for action from another officer; (2) when the officer received tips from other police officers or informants, which were then corroborated by

the officer's own observations; and (3) when the officer directly observed illegal activity." *Anderson*, 2005 ND 97, ¶ 9, 696 N.W.2d 918. The DOT argues the activity observed by Officer Wise, a vehicle traveling 8–10 miles per hour in a 25 mile per hour zone, was enough, by itself, to provide reasonable and articulable suspicion to stop the vehicle.

[¶ 9] "The reasonable suspicion standard must be objective and is based on the totality of the circumstances." *Kappel v. Director, N.D. Dept. of Trans.*, 1999 ND 213, ¶ 7, 602 N.W.2d 718. Reasonable suspicion to justify a stop is present when a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity. *Id.* "The reasonable suspicion standard is not as exacting as the probable cause standard." *Id.* "Nevertheless, a mere hunch illegal activity is taking place is not enough to justify the detention of a motorist." *Id.* "An investigative stop of a moving vehicle must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and mere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice." *Salter v. N.D. Dept. of Trans.*, 505 N.W.2d 111, 114 (N.D.1993). "The mere fact that a driver is traveling at a slower than usual speed on a roadway does not by itself create a reasonable suspicion of driving under the influence of alcohol or of other illegal activity." *State v. Brown*, 509 N.W.2d 69, 71 (N.D.1993).

### III

[¶ 10] In this case there is no evidence of erratic driving, sharp veering, or any of the other factors present in prior cases. The DOT concedes there was no minimum speed limit on the road where Johnson was stopped. However, the DOT argues the speed of Johnson's vehicle was so slow that it was impeding traffic in violation of N.D.C.C. § 39–09–09(1), and Officer Wise had a reasonable and articulable suspicion to stop Johnson's vehicle because Johnson was violating that statute.

[¶ 11] N.D.C.C. § 39–09–09(1) provides:

> No person may drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.

[¶ 12] The only evidence presented to support the DOT's argument is Officer Wise's testimony stating Johnson was traveling 8–10 miles per hour in a 25 mile per hour zone. Officer Wise's testimony indicates he was unaware of any other vehicles that were impeded by Johnson's slow speed. In *Salter*, we held evidence that the driver was traveling 30–35 miles per hour in a 50 mile per hour zone without further evidence of illegal activity, such as erratic driving or clear facts showing traffic was impeded in violation of N.D.C.C. § 39–09–09(1), did not support a conclusion that the arresting officer had a reasonable and articulable suspicion of a violation justifying a stop. *Salter v. N.D. Dept. of Trans.*, 505 N.W.2d 111, 114 (N.D. 1993). In *Brown*, we held evidence that the driver was traveling at a slower than usual speed, with no further evidence of illegal activity, did not alone create a reasonable and articulable suspicion justifying a stop. *State v. Brown*, 509 N.W.2d 69, 71 (N.D.1993).

[¶ 13] The DOT argues the totality of the circumstances, namely Johnson's slow speed coupled with the fact that this stop was made in the early morning hours around 12:43 a.m., provides the requisite reasonable and articulable suspicion of illegal activity. In *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D.1992), we held "the

time of night, the burglary possibilities, the safety of the occupant, if the car was stolen, if someone needed assistance, and the fact that Sarhegyi began to pull away from [the officer] as [the officer] entered the lot" were not legally sufficient bases for reasonable suspicion "when examined in light of existing case law." We have also held that an officer's unfamiliarity with the vehicle, his awareness of several burglaries in the area, and the vehicle's location in the vicinity of a liquor store at 1:50 a.m., after business hours, amounted to no more than a vague hunch of illegal activity and did not justify a stop because there was no objective evidence that the driver had violated or was about to violate a law. *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D.1994). People travel on our roads at all hours of the day and it is not unusual for people to be traveling at 12:43 a.m. Furthermore, it is logical that drivers may reduce their speeds when traveling in the dark. These two non-suspicious factors, even when taken together, did not provide the requisite reasonable and articulable suspicion to justify stopping Johnson's vehicle.

[¶ 14] The facts of this case are not enough to provide a reasonable and articulable suspicion of illegal activity. Arguably there may be a case in which the traveling speed is so slow so as to, by itself, create a reasonable and articulable suspicion to stop a vehicle. The circumstances surrounding this stop do not provide that case. Johnson was driving 8–10 miles per hour in town in a 25 mile per hour zone. It is not that unusual to encounter a vehicle driving through a residential or densely populated area at similar speeds which are slower than the posted speed limit.

[¶ 15] In accord with our holdings in *Brown* and *Salter*, we conclude the arresting officer did not have the requisite reasonable and articulable suspicion to stop Johnson's vehicle. We affirm the district court's judgment reinstating Johnson's driving privileges.

[¶ 16] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 17] I dissent for two reasons. First, the majority, rather than examine all the facts in their totality, has chosen to disregard facts that are critical to the analysis of whether Officer Wise had a reasonable and articulable suspicion to stop Johnson's vehicle. Second, the totality of the circumstances demonstrates Officer Wise had a reasonable and articulable suspicion that criminal activity was occurring. Therefore, I would reverse the district court and reinstate the decision of the administrative hearing officer.

I

[¶ 18] The majority has disregarded facts that are critical to a reasonable and articulable analysis, specifically that Johnson had created a safety hazard and Officer Wise relied on his experience and training before stopping Johnson. The majority correctly notes, at ¶ 9, that "[t]he reasonable suspicion standard must be objective and is based on the totality of the circumstances." *Kappel v. Dir., N.D. Dep't of Transp.*, 1999 ND 213, ¶ 7, 602 N.W.2d 718. The majority's recitation of the facts, however, does not provide the totality of what Officer Wise considered before he stopped Johnson.

[¶ 19] The majority notes, at ¶ 2, that the events leading up to the stop occurred early in the morning of August 30, 2005, at approximately 12:43 a.m. Officer Wise testified he was traveling northbound on Second Avenue West near the avenue's intersection with Second Street in Williston at

the posted speed limit of twenty-five miles per hour. According to Officer Wise, he noticed another northbound vehicle traveling slowly ahead of him. Officer Wise testified he rapidly caught up to the other vehicle, approximately at the intersection of Second Avenue West and Ninth Street, and had to brake to avoid a collision because the other vehicle was traveling more slowly than Officer Wise had first believed. According to Officer Wise, he paced Johnson for the next two blocks at eight to ten miles per hour and stopped him after they crossed the intersection at Eleventh Street. Assuming Officer Wise was driving at twenty-five miles per hour and Johnson was driving at ten miles per hour, Johnson would have traveled approximately three blocks during the time Officer Wise drove the seven blocks it took him to catch up to Johnson. Officer Wise then observed Johnson driving at eight to ten miles per hour for another two blocks before initiating the traffic stop. Therefore, Officer Wise would have observed Johnson driving well below the speed limit for approximately five blocks.

[¶ 20] The majority, at ¶ 14, states, "It is not that unusual to encounter a vehicle driving through a residential or densely populated area at similar speeds which are slower than the posted speed limit." The record, however, contains no evidence to support this statement. Perhaps a driver might commonly slow to below the speed limit for a short distance in an attempt to find someone's home or business, but those are not the facts presented. Johnson was driving eight to ten miles per hour for five blocks very early in the morning. There is nothing in the record to reflect that his behavior was anything but unusual.

[¶ 21] Officer Wise testified he knew through his training and experience that rapid braking, swerving, line-crossing, and traveling well under the posted speed limit are all signs of impaired driving. He also testified that driving too slowly creates a safety hazard for others and that, in his experience, drivers going that slowly have contributed to rear-end accidents. Thus, Officer Wise had the following facts on which to rely when deciding whether to stop Johnson: Johnson was driving very slowly after midnight, and Officer Wise's training and experience taught him that very slow driving is a sign of impairment and that driving extremely slowly may constitute a safety hazard. After considering all the facts, one can see that Officer Wise relied on more than Johnson's slow speed and the time of day before making the traffic stop, contrary to what the majority claims.

II

[¶ 22] An examination of the totality of the circumstances Officer Wise relied on demonstrates that he had a reasonable and articulable suspicion that criminal activity was occurring when he made the traffic stop. The majority, at ¶ 8, notes this Court has discussed three different events that give an officer reasonable and articulable suspicion, including "when the officer directly observed illegal activity." As the Ohio Court of Appeals has noted, however, "[I]t is a common misperception that, in order to effectuate a *Terry* stop, the police must actually observe the person engaging in criminal activity." *State v. Frank*, Nos. C–990079, C–990080, C–990081, 2000 WL 192132, at *3 (Ohio Ct.App. Feb.18, 2000). We have also acknowledged that actual illegal activity is not required: "the reasonable suspicion standard does not require an officer to see a motorist violating a traffic law or to rule out every potential innocent excuse for the behavior in question before stopping a vehicle for investigation." *Kappel*, 1999 ND 213, ¶ 10, 602 N.W.2d 718. In *Kappel*, we relied on the United States Supreme Court's statement

in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), that investigating officers may rely on common sense when deciding whether to stop a vehicle:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain *common sense* conclusions about human behavior; jurors as factfinders are permitted to do the same—and *so are law enforcement officers*. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by *those versed in the field of law enforcement*.

*Cortez*, 449 U.S. at 418, 101 S.Ct. 690 (emphasis added). Therefore, Officer Wise was allowed to take all the circumstances known to him and rely on his common sense and experience when he decided to stop Johnson.

[¶ 23] *Frank* involved a traffic stop that occurred after a law enforcement officer had observed a vehicle traveling fifteen to twenty miles per hour in a twenty-five to thirty-five mile-per-hour zone. *Frank*, 2000 WL 192132, at *1. The officer had been notified by another officer that the driver might be impaired. *Id.* The officer also observed other cars being forced to pass the slow-moving vehicle. *Id.* The Ohio Court of Appeals noted *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), did not involve any overtly illegal activity:

> *Terry* itself did not involve any overt illegal activity; rather, all the detective observed in that case was the defendant and his confederates loitering outside a store in the middle of the day, pausing to stare in the window and then conferring among themselves. Notwithstanding the perfectly legal nature of their presence in front of the store, the United States Supreme Court held that an experienced detective was justified in suspecting the confederates of planning a daylight robbery and was therefore entitled to stop and ask them questions. It is important to remember, in this regard, that a *Terry* stop is an *investigatory* tool and does not require certitude, or probability, but only a reasonable suspicion, based upon specific, articulable facts, that criminal activity is afoot.

*Frank*, 2000 WL 192132, at *3. The court held the officer's traffic stop was based on a reasonable and articulable suspicion. *Id.* at *5.

[¶ 24] In *State v. Baudhuin*, the Wisconsin Supreme Court held a law enforcement officer was justified in stopping a driver who was driving slowly and impeding traffic. 141 Wis.2d 642, 416 N.W.2d 60, 64 (1987). The officer stopped the driver after pacing the driver's speed at no more than seventeen miles per hour in a twenty-five mile-per-hour zone at 2:00 a.m. *Id.* at 61. The officer was directly behind the driver, and other vehicles had begun to back up behind the officer's car because of the slow-moving vehicle. *Id.* The officer's subjective reason for stopping the car was to learn whether there was something mechanically wrong with the driver's car. *Id.* The court held the officer's subjective intent was not relevant because the objective facts presented a reasonable and articulable suspicion of criminal activity. *Id.* at 63.

[¶ 25] The majority, at ¶ 12, rejects the State's argument that Johnson was impeding traffic and notes that Johnson was not actually impeding traffic at the time of the traffic stop. This presumes, however, that Johnson must actually have violated the statute that prohibits impeding traffic before a stop could be justified. This is not

required. If actual criminal activity were required, the reasonable-and-articulable-suspicion standard would not be necessary because the law enforcement officer would have *probable cause* to arrest the person. *Frank,* 2000 WL 192132, at *3.

[¶ 26] The majority cites *State v. Sarhegyi,* 492 N.W.2d 284 (N.D.1992), and *State v. Robertsdahl,* 512 N.W.2d 427 (N.D.1994), for support that the time of day of the stop was irrelevant. In *Sarhegyi,* however, the only other facts the officer had to rely on were the defendant's location in the lot of a closed business and the defendant's attempt to move when approached by the officer. 492 N.W.2d at 285. And in *Robertsdahl,* the officer relied only on the occurrence of several burglaries in the general area and his unfamiliarity with the defendant's vehicle. 512 N.W.2d at 427.

[¶ 27] In this case, Johnson's actions are more suspicious. Johnson was driving well below the speed limit early in the morning of August 30. Officer Wise, relying on his experience, testified that driving below the speed limit is a sign of impaired driving and that Johnson was a safety risk because his slow speed could contribute to a traffic accident. Officer Wise observed Johnson driving well below the speed limit, observed a present safety risk, and relied on his experience that driving below the speed limit is a sign of impairment. These facts are an objective, common-sense manifestation that could lead a reasonable officer, or any reasonable person for that matter, to suspect potential criminal activity. Although the officer's vehicle was impeded, other vehicles actually being impeded is not required for an officer to have a reasonable investigatory suspicion that criminal activity is afoot. Officer Wise had a reasonable and articulable suspicion, and the traffic stop was justified.

[¶ 28] By focusing individually on Johnson's slow speed and individually on the time of day, the majority removes these facts from the totality of the circumstances that Officer Wise weighed when deciding to stop Johnson. In doing so, the majority fails to follow the totality-of-the-circumstances analysis required by our caselaw.

### III

[¶ 29] I would reverse the district court and reinstate the department's order.

[¶ 30] Dale V. Sandstrom