2007 ND 52

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Marie A. WESTMILLER, Defendant and Appellant.**

No. 20060246.

Supreme Court of North Dakota.

April 10, 2007.

Brandi Sasse Russell, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Steven Balaban, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Marie A. Westmiller appealed from a criminal judgment entered upon her conditional plea of guilty to the offense of driving under the influence. Westmiller argues the district court erroneously denied her motion to suppress evidence because the arresting officer illegally stopped her vehicle. We conclude the officer had reasonable and articulable suspicion that Westmiller committed a traffic violation, and we affirm.

I

[¶ 2] Shortly before midnight on February 1, 2006, Burleigh County Sheriff's Deputy Casey Kapp stopped Westmiller's vehicle on County Highway 10 near 353rd Street. Deputy Kapp was patrolling westbound on the two-lane highway when he encountered Westmiller's vehicle, which was traveling eastbound. The deputy was using his low-beam headlights at the time. When Westmiller was about an eighth of a mile away from Deputy Kapp's vehicle, she turned her headlights from dim to bright three times. At that point, Deputy Kapp activated his emergency lights and stopped Westmiller's vehicle. The deputy approached Westmiller and informed her that she had been stopped "because she flashed her headlights at [him] approximately three times." As a result of the traffic stop, Westmiller was arrested for driving under the influence of alcohol.

[¶ 3] Westmiller moved to suppress any evidence gathered through the stop of

her vehicle, arguing that the stop was illegal. At the suppression hearing, Deputy Kapp testified that he stopped Westmiller for two reasons. The deputy stated, "The first one being it's a traffic violation to fail to dim headlights when required, and the second reason being kind of the community caretaker responsibility." On cross-examination, Deputy Kapp had the following exchange with Westmiller's counsel about the reason for the stop.

Q. And when she flashed her high beams at you, were they flashed at you as if your high beams were on and she was telling you to dim yours, or were they just on and then off in a slow fashion? How was the flashing of the high beams?

A. I guess I would describe it as they were turned in a manner to where she was trying to indicate me to dim my headlights is what I had assumed from it.

Q. And that was the only reason for the stop; correct?

A. Well, and as I said earlier, too, it could be an indication that there's something going wrong in the vehicle. I mean, I'm not sure, somebody flashing their lights at you, it could mean two things. Like I said, they are trying to get you to dim your lights, or there's something wrong in the vehicle.

Q. But she didn't pull over and waive [sic] you down. She kept driving; correct?

A. Correct.

[¶ 4] Deputy Kapp also testified in some detail about the distance between the vehicles at the time Westmiller flashed her bright headlights. On direct examination, he recounted that Westmiller's vehicle was about an eighth of a mile away from him. Westmiller's counsel further questioned the deputy about this distance on cross-examination.

Q. According to the statute you cite on failing to dim high beams, how far away does somebody have to be before they dim their high beams?

A. I'd have to review the statute. I believe it's 500 feet. I'd have to review the 39 Code.

Q. You don't know for sure?

A. Not exactly, no.

Q. And you stated she was an eighth of a mile away?

A. With the—it's—she was very close. I mean, she wasn't very far away. It was almost like we were coming around a curve and kind of met. It might have been less than an eighth of a—

Q. Officer or Deputy, my question was your testimony was that she was about an eighth of a mile away; is that correct?

A. Correct.

[¶ 5] After considering the evidence, the district court denied Westmiller's motion to suppress. In response to Westmiller's argument that she was more than 500 feet away from the officer, and therefore not in violation of the statute, the district court had the following exchange with defense counsel.

Mr. Balaban: Driving with high beams on is not illegal; and according to the officer, outside that 500 feet [sic] zone it's still legal. And according to his testimony, she was outside of that zone.

The Court: Well, but they were moving; right?

Mr. Balaban: They were moving.

The Court: Your calculation is that's when he said he first saw her. It doesn't take very long to cover that 150 feet if that's an issue.

Mr. Balaban: That's true, Your Honor. Well, any doubt in that is, I believe, according to case law, is supposed to be

conferred in favor of the defendant when there is a doubt as far as that goes. The Court: Well, there isn't a doubt in my mind that they were moving, and that he would cover the 150 feet pretty quickly.

[¶ 6] Westmiller also argued that flashing bright headlights within 500 feet was not prohibited by the statute, and that the deputy was not acting as a community caretaker. With regard to the statute, the district court observed that it viewed failing to dim headlights and flashing headlights as two different things. The district court stated:

In this situation I guess I would agree with Mr. Balaban that it was not likely a violation of the law for her to flash her lights.

However, the constitutional provision we're dealing with talks about unreasonable seizures, and I don't think that the officer proceeded unreasonably. I think it would be unreasonable for a person to think that if they met an officer on the road and flashed their lights at them three times, he wouldn't respond in some way. And I think the fact that it may have not have been [sic] in his report is not conclusive evidence. I don't think it's unreasonable that the officer felt there was some need to further investigate the situation when, as I said, he—from his—and I agree with you, Mr. Balaban, you have to look at the officer's point of view and whether it's reasonable from the officer's perspective. And in this case he's driving down the road, car meets him, flashes her lights at him three times; I think it's perfectly reasonable for him to take the steps he did.

You know, I guess we could argue, you know, if he thought there was a traffic violation, whether that gives a— he thought there was a violation, wheth-

er we agree with that here in the courtroom today, or not, I don't know is really the issue.

We have to, again, as you said, Mr. Balaban, look at it from his perspective. Number one, he thought that she was committing a violation by flashing her lights three times at him, and he was going to make a traffic stop. Number two, I don't think it's unreasonable for him to think that there may have been something else going on or some problem in the vehicle when a person is flashing their lights at him.

## II

[¶ 7] When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Graf,* 2006 ND 196, ¶ 7, 721 N.W.2d 381. We recognize that the district court is in a superior position to assess the credibility of witnesses and weigh the evidence. *State v. Goebel,* 2007 ND 4, ¶ 11, 725 N.W.2d 578. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. *Graf,* at ¶ 7. Questions of law are fully reviewable on appeal, and whether the findings of fact meet a legal standard is a question of law. *Goebel,* at ¶ 11.

[¶ 8] Westmiller argues the district court should have granted her motion to suppress because Deputy Kapp did not have reasonable suspicion to stop her vehicle. Specifically, Westmiller claims she did not violate N.D.C.C. § 39–21–21 when she flashed her high-beam headlights three times at the deputy's oncoming vehicle.

[¶ 9] Investigatory stops for traffic violations are governed by well-settled principles in our case law. In order to stop a moving vehicle for investigative purposes, an officer must have at least a reasonable and articulable suspicion that the motorist has violated or is violating the law. *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 9, 720 N.W.2d 433. Although reasonable suspicion is the minimum quantum of evidence required for an investigatory traffic stop, *see, e.g., State v. Johnson*, 2006 ND 248, ¶¶ 9, 12, 724 N.W.2d 129, we will also uphold a stop on the basis of probable cause if that evidentiary standard has been satisfied. *See, e.g., State v. Fields*, 2003 ND 81, ¶ 7, 662 N.W.2d 242 (upholding an investigatory stop because the officer had probable cause to believe Fields' vehicle registration was expired); *State v. Loh*, 2000 ND 188, ¶¶ 6, 14, 618 N.W.2d 477 (concluding the officer had not only reasonable suspicion, but also probable cause for a traffic stop when he observed a vehicle weaving and crossing the lane lines). It is well-established that traffic violations, even if considered common or minor, constitute prohibited conduct and therefore provide officers with requisite suspicion for conducting investigatory stops. *Hanson v. N.D. Dep't of Transp.*, 2003 ND 175, ¶ 15, 671 N.W.2d 780.

[¶ 10] Reasonable suspicion requires more than a mere hunch. *State v. Smith*, 2005 ND 21, ¶ 15, 691 N.W.2d 203. Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential unlawful activity. *Johnson v. Sprynczyna-tyk*, 2006 ND 137, ¶ 9, 717 N.W.2d 586; *Smith*, at ¶ 15. The reasonable suspicion standard is objective and does not hinge upon the subjective beliefs or motivations of the arresting officer. *State v. Leher*, 2002 ND 171, ¶ 11, 653 N.W.2d 56. In order to determine whether an investigative stop is valid, we consider the totality of the circumstances and examine the information known to the officer at the time of the stop. *Gabel*, 2006 ND 178, ¶ 11, 720 N.W.2d 433; *State v. Torkelsen*, 2006 ND 152, ¶ 13, 718 N.W.2d 22. The reasonable suspicion standard does not require an officer to rule out every possible innocent excuse for the behavior in question before stopping a vehicle for investigation. *State v. Decoteau*, 2004 ND 139, ¶ 14, 681 N.W.2d 803.

[¶ 11] In this case, Deputy Kapp stopped Westmiller's vehicle because he believed she violated N.D.C.C. § 39–21–21 by flashing her high-beam headlights three times at his oncoming vehicle. Section 39–21–21 provides, in relevant part:

> Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in section 39–21–01, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations:
>
> 1. Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred feet [152.4 meters], such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver. The lowermost distribution of light, or composite beam, specified in subsection 2 of section 39–21–20 must be deemed to avoid glare at all times, regardless of road contour and loading.

The plain language of the statute requires the use of low-beam headlights within 500 feet of an oncoming vehicle. While we recognize that drivers may be accustomed

to quickly flashing their high-beam headlights at an oncoming vehicle as a signal to dim headlights, there is no evidence in this case that the officer was driving with his high-beam headlights. Furthermore, the statute does not provide any exceptions for the momentary flashing of high-beam headlights. Thus, we must conclude the statute prohibits the use of high-beam headlights within 500 feet of an oncoming vehicle, for any length of time and for any purpose.

[¶ 12] We recognize that at least one other appellate court has interpreted similar statutory language and reached the opposite conclusion. *See Waukesha County v. Meinhardt*, 2001 WI App 146, ¶¶ 9–10, 630 N.W.2d 277 (holding that Meinhardt did not commit a violation by flashing his high-beam headlights two times at an oncoming vehicle, because the plain language of the statute did not prohibit the quick flashing of high-beam headlights). In another case involving a similar statute, *State v. Woods*, 86 Ohio App.3d 423, 621 N.E.2d 523, 525 (1993), the court held that the defendant's "momentary flick onto high beam followed immediately by a return to low beam" was not a violation. However, in *Woods*, the evidence showed that the defendant met the oncoming vehicle as both parties were rounding a right-hand curve, and she dimmed her bright lights at the instant the approaching vehicle was visible. *Id.* at 524–25. Thus, *Woods* is quite different factually from the case at hand.

[¶ 13] Furthermore, the plain language of the statute does not make any exceptions for the momentary flashing of high-beam headlights. When a statute is clear and unambiguous, it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide. *Preference Person-*nel, Inc. v. Peterson, 2006 ND 35, ¶ 6, 710 N.W.2d 383. The letter of the statute cannot be disregarded under the pretext of pursuing its spirit because legislative intent is presumed to be clear from the face of the statute. *Id.*

[¶ 14] Because N.D.C.C. § 39–21–21 prohibits any use of high-beam headlights within 500 feet of an oncoming vehicle, Deputy Kapp had reasonable suspicion to stop Westmiller for violating the statute. The deputy testified that Westmiller turned her headlights from dim to bright three times as their vehicles approached each other on County Highway 10. The deputy testified that he was about an eighth of a mile away from Westmiller's vehicle when the flashing began. The district court reasoned that the parties were moving and would have entered the 500-foot zone "pretty quickly." Based on these objective facts, Deputy Kapp reasonably suspected that Westmiller had committed a violation of N.D.C.C. § 39–21–21. Therefore, we conclude the investigative stop of Westmiller's vehicle was constitutionally permissible.

[¶ 15] Because of our conclusion on this issue, we do not reach the State's argument that Deputy Kapp was acting as a community caretaker when he stopped Westmiller.

## III

[¶ 16] We affirm the criminal judgment.

[¶ 17] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concurs.

DALE V. SANDSTROM, J., I concur in the result.