STATE of North Dakota, Plaintiff
and Appellee,

v.

Mark W. DORENDORF, Defendant
and Appellant.

Cr. No. 1032.

Supreme Court of North Dakota.

Dec. 28, 1984.

Thomas K. Schoppert, Schoppert Law Firm, New Town, for defendant and appellant.

Dennis Edward Johnson, State's Atty., Watford City, for plaintiff and appellee.

GIERKE, Justice.

Mark W. Dorendorf appeals from a judgment of the County Court of McKenzie County dated May 31, 1984, which convict-

ed him of driving while under the influence of intoxicating liquor in violation of § 39–08–01(1)(a) of the North Dakota Century Code. We affirm.

The parties stipulated to the following facts of the case:

On March 3, 1984, Dorendorf was driving a Ford pickup truck in a southerly direction on U.S. Highway No. 85 south of Watford City.

Shortly before 1 a.m. on March 3, 1984, Dorendorf was stopped by Officers John Fulwider and Lloyd Clock of the McKenzie County Sheriff's Department. After stopping Dorendorf, Fulwider and Clock determined that probable cause existed to place Dorendorf under arrest for driving while under the influence of intoxicating liquor in violation of § 39–08–01, N.D.C.C.

Chemical tests, including a Breathalyzer test and a blood test, were performed on Dorendorf within two hours after his driving and subsequent arrest. The tests showed that Dorendorf's blood alcohol content was at least ten one-hundredths of one percent by weight. The parties agree that Dorendorf was driving while under the influence of intoxicating liquor on March 3, 1984.

Dorendorf was tried before the Honorable William M. Beede in the County Court of McKenzie County on May 31, 1984. Dorendorf made a motion to suppress the chemical tests on the basis that the officers lacked probable cause to stop him. The motion was denied. The court determined that Dorendorf was guilty of driving while under the influence of intoxicating liquor. Dorendorf appeals from the judgment of conviction.

The sole issue on appeal is whether or not the county court erred in denying Dorendorf's motion to suppress the chemical tests. Dorendorf's only dispute is that the officers lacked probable cause to justify the initial stop. He concedes that the officers had probable cause to effect the arrest.

Officers Fulwider and Clock testified that, on March 3, 1984, they were northbound on U.S. Highway No. 85 when Clock noticed that the pickup truck which was approaching them was weaving within its lane of traffic. The officers met the oncoming pickup, which was operated by Dorendorf, and, as it passed them, Fulwider turned the patrol car around and followed Dorendorf's pickup for approximately one-eighth to a quarter of a mile. Officers Fulwider and Clock testified that they again observed the vehicle weaving within its own lane of traffic. This observation led the officers to stop the vehicle to investigate the cause of the weaving. Upon investigation, the officers determined that Dorendorf was under the influence of intoxicating liquor and arrested him.

■ Dorendorf's contention is that a smooth, continuous weaving within a lane of traffic does not give rise to probable cause for stopping a vehicle for investigatory purposes. Dorendorf argues that there should be some constraints applied to an officer who stops a driver who is only weaving within his lane of traffic. Dorendorf relies on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), in which case the United States Supreme Court held that a random, discretionary stop without probable cause is unconstitutional. *Prouse, supra*, involved a random stop for the purpose of checking the driver's license and vehicle registration. Although the facts in *Prouse* are inapposite to those in the instant case, we are in accord with the general principle that there must be an articulable basis or reasonable suspicion for stopping a vehicle for investigation.

In *Witte v. Hjelle*, 234 N.W.2d 16 (N.D. 1975), we held, in paragraphs 3 and 4 of the syllabus, that:

"3. Probable cause exists when the facts and circumstances within a police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable cau-

tion in believing that an offense has been or is being committed.

"4. Probable cause is a determination dependent on the particular facts and circumstances of each case."

We must first note that there is a distinction between probable cause which justifies stopping a vehicle for investigatory purposes and probable cause which justifies arresting a person for driving while under the influence of intoxicating liquor. *State v. Lange*, 255 N.W.2d 59, 63 (N.D.1977); *State v. Kolb*, 239 N.W.2d 815, 817 (N.D. 1976); *Borman v. Tschida*, 171 N.W.2d 757, 761–762 (N.D.1969).

In *Borman, supra* 171 N.W.2d at 758, in paragraph 2 of the syllabus, this court held that a police officer may stop a motorist under circumstances short of probable cause for arrest. We held that the officer in *Borman, supra*, had sufficient cause to stop a motorist for investigation where the officer had observed the car in question veer sharply, had heard the squealing of tires, and, while following the car, had observed that it swayed back and forth within its lane of traffic. *Borman, supra* 171 N.W.2d at 760–761.

Courts in other jurisdictions have held that the observation of a vehicle weaving within its own lane of traffic gives rise to probable cause to stop a vehicle for investigation. *State v. Ellanson*, 293 Minn. 490, 198 N.W.2d 136, 137 (1972); *State v. Bailey*, 51 Or.App. 173, 624 P.2d 663, 664 (1981).

In *State v. Lange, supra*, this court held that the police officer who had received information from the highway patrol as to a possible "driving while intoxicated" violation and who had observed the vehicle in question weaving from side to side within its own lane of traffic was justified in stopping the vehicle for investigatory purposes. *Lange, supra* 255 N.W.2d at 63.

■ We recognize that the instant case differs from *Lange* in that the officer in *Lange* had received a tip from the highway patrol, in addition to making his own observation of the vehicle's weaving. However,

an examination of the facts in this case leads us to conclude that the officers were justified in stopping Dorendorf for investigation. Officers Fulwider and Clock observed the weaving of the Dorendorf vehicle as it approached them. Fulwider then turned the patrol car around and followed Dorendorf, at which time both Fulwider and Clock observed Dorendorf's smooth, continuous weave within his own lane of traffic.

Officers Fulwider and Clock have, respectively, seven and nine years' experience in law enforcement. Both officers have in the past made investigatory stops based on circumstances similar to those presented in the instant case. Furthermore, Fulwider characterized Dorendorf's driving as "erratic" as compared to other driving he observed on March 3, 1984. As Fulwider testified, a vehicle's weaving within its own lane of traffic may be caused by a number of reasons, among them: 1) the driver is tired, 2) the vehicle has equipment problems, or 3) the driver is under the influence of alcohol. The officers stopped Dorendorf to determine exactly what was causing the vehicle to weave.

Dorendorf suggests that the officers lacked probable cause to stop him because the officers were unable to articulate at trial the exact type of weaving which prompted them to stop him for investigation. This inability to articulate the weaving, according to Dorendorf, means that there was "merely a rush to judgment" in stopping Dorendorf. We disagree.

As we indicated previously in this opinion, the facts and circumstances of each case dictate whether or not probable cause exists to justify stopping a vehicle for investigation. We conclude that the circumstances in the instant case justified the initial stop of Dorendorf.

Affirmed.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.