Mark SALTER, Plaintiff and Appellee,

v.

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellant.

Civ. No. 930020.

Supreme Court of North Dakota.

Sept. 8, 1993.

William D. Schmidt (argued), Wheeler Wolf, Bismarck, for plaintiff and appellee.

Michele G. Johnson (argued), Asst. Atty. Gen., Atty. General's Office, Bismarck, for defendant and appellant.

NEUMANN, Justice.

The North Dakota Department of Transportation [the Department] appealed from a district court judgment reversing the 91–day suspension of Mark Salter's driving privileges. We affirm the judgment of the district court.

On February 8, 1992, at approximately 3:00 A.M., Officer Donald Polasky of the North Dakota Highway Patrol was driving on a rural road on the outskirts of Bismarck when he met a vehicle driven by Salter traveling in the opposite direction. Salter's vehicle was going 30–35 miles per hour in a 50 mile-per-hour zone. Officer Polasky turned his vehicle around and followed Salter. Officer Polasky testified that there was a "slight movement back and forth" within the lane, the vehicle was traveling 30–35 miles per hour in a no-passing zone, and other vehicles were coming up from behind. Officer Polasky stopped Salter's vehicle and administered field-sobriety tests. Salter was arrested for driving under the influence, and a subsequent blood test revealed a blood alcohol content of .12 percent.

■ Salter requested and received an administrative hearing. The hearing officer found that Salter was traveling 30 miles per hour in a 55 mile-per-hour zone, that Salter's vehicle weaved slightly within its own lane, and that traffic was "backing up" behind

Salter and Polasky's vehicles. From these facts, the hearing officer concluded that Officer Polasky had "reasonable grounds"[1] to stop Salter's vehicle. Salter's driving privileges were suspended for 91 days.

Salter appealed to the district court. The district court concluded that the officer lacked a reasonable and articulable suspicion that a law was being violated, and reversed the suspension. The Department has appealed.

■ Our review of an appeal from a district court decision on a license suspension is governed by the Administrative Agencies Practice Act. Chapter 28–32, N.D.C.C. We review the record and decision of the administrative agency, not the ruling of the district court. *McNamara v. Director of North Dakota Department of Transportation*, 500 N.W.2d 585, 586 (N.D.1993); *North Dakota Department of Transportation v. DuPaul*, 487 N.W.2d 593, 595 (N.D.1992). Our review is limited to whether (1) the findings of fact are supported by a preponderance of the evidence; (2) the conclusions of law are sustained by the findings of fact; and (3) the agency decision is supported by the conclusions of law. *McNamara, supra*, 500 N.W.2d at 586; *DuPaul, supra*, 487 N.W.2d at 595.

■ The dispositive issue on appeal is whether Officer Polasky had a reasonable and articulable suspicion that Salter was violating the law, thereby justifying the stop of the vehicle. Disputes concerning the underlying factual circumstances present questions of fact, and the hearing officer's findings on those predicate facts will be overturned on appeal only if they are not supported by a preponderance of the evidence. However, the ultimate conclusion of whether those facts meet the legal standard, rising to the level of a reasonable and articulable suspicion, is a question of law which is fully reviewable on appeal. *See Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir.1992); *United States v. Campbell*, 843 F.2d 1089, 1092 (8th

---

1. The appropriate standard is that the officer must have a reasonable and articulable suspicion that a motorist is violating the law, not "reasonable grounds," to justify the stop of a moving vehicle. *See, e.g., McNamara v. Director of North Dakota Department of Transportation*, 500 N.W.2d 585, 587 (N.D.1993).

Cir.1988). *Cf. Wilhelmi v. Director of the Department of Transportation*, 498 N.W.2d 150, 156 (N.D.1993) ("Probable cause is a question of law").

The Department asserts that three factors support the hearing officer's conclusion that Officer Polasky had a reasonable and articulable suspicion that Salter was violating the law: (1) weaving within the lane of traffic; (2) driving at a slow speed that impeded traffic; and (3) "erratic" driving.

■ The Department relies upon *State v. VandeHoven*, 388 N.W.2d 857 (N.D.1986), and *State v. Dorendorf*, 359 N.W.2d 115 (N.D.1984), to support its assertion that weaving within one's own lane of travel may give rise to a reasonable and articulable suspicion of violation of the law. In *VandeHoven, supra*, 388 N.W.2d at 859 (footnotes omitted), we stated:

"VandeHoven argues that the initial erratic movement, or weaving, was not sufficient to justify a stop. We disagree. Perhaps VandeHoven's observed behavior is not so cumulative as the behavior that justified the stopping of the vehicles in *Dorendorf* [initial weaving, subsequent weaving], *State v. Lange*, 255 N.W.2d 59 (N.D.1977) [officers responding to report of unidentified DWI suspect, weaving], *State v. Kolb*, 239 N.W.2d 815 (N.D.1976) [slight weaving, extreme fluctuations in speed, veering onto shoulder of road, crossing over center line], or *Borman v. Tschida*, 171 N.W.2d 757 (N.D.1969) [sharp veering in one direction, squealing of tires, weaving within own lane]. Although there may be situations where slight weaving cannot serve as a basis for a valid stop, the erratic movement of the vehicle in this case provided sufficient basis to create an articulable and reasonable suspicion that VandeHoven was violating the law. See *Dorendorf, supra*."

In this case there is no evidence of erratic movement, sharp veering, or any of the other factors noted in prior cases. Officer Polasky specifically testified that Salter did not cross the center line or the frost line. In fact, Officer Polasky repeatedly characterized the weaving as "slight" or "minimum," and he apparently did not consider it significant enough to include in his initial written report of the incident. This is precisely the type of "slight weaving" which we cautioned in *VandeHoven* would not serve as a valid basis for a vehicle stop. See also *Warrick v. Commissioner of Public Safety*, 374 N.W.2d 585, 586 (Minn.Ct.App.1985).[2]

The Department also argues that the slow speed of Salter's vehicle was impeding traffic, and therefore provided a reasonable and articulable suspicion of a violation. We must first correct an obvious error in the hearing officer's findings of fact. The hearing officer found that Salter was traveling 30 miles per hour in a 55 mile-per-hour zone. There is no support in the record for this finding. All references in the record suggest that Salter was traveling 30–35 miles per hour in a 50 mile-per-hour zone. We conclude that the hearing officer's finding that Salter was driving 30 miles per hour in a 55 mile-per-hour zone is not supported by the evidence. For purposes of determining whether the facts support a reasonable and articulable suspicion in this case, we will accept Officer Polasky's unrefuted testimony that Salter was driving 30–35 miles per hour in a 50 mile-per-hour zone.

The Department concedes that there was no minimum speed limit on this roadway. The Department asserts, however, that Salter's speed was so slow that it was impeding traffic in violation of Section 39–09–09(1), N.D.C.C., and that Officer Polasky had a reasonable and articulable suspicion of a violation of that statute.

Section 39–09–09(1), N.D.C.C., provides:
"No person may drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

**2.** *Warrick, supra*, which we relied upon in *Vande-Hoven, supra*, is virtually identical to this case. The officer stopped the defendant's vehicle at approximately 1:45 A.M. after observing "subtle" weaving of the vehicle within its own lane, and slow speed ranging from 40 to 45 miles per hour. The court held that these facts were insufficient to justify a reasonable and articulable suspicion, making the vehicle stop illegal.

The only evidence presented to support the Department's argument is Officer Polasky's testimony that Salter was traveling 30–35 miles per hour in a 50 mile-per-hour no-passing zone, and that "[v]ehicles are coming up behind me because, you know, they want to go by, and I can't pass. . . ."

The minimal facts in this record do not support a conclusion that Officer Polasky had a reasonable and articulable suspicion that Salter was impeding traffic in violation of Section 39–09–09(1), N.D.C.C. There is no evidence of the length of the no-passing zone, nor do we know if there was one, five, or ten cars coming up behind Salter and Officer Polasky. We do not know if Salter was truly impeding traffic in violation of the statute, or if Salter's relatively slow speed only momentarily delayed some drivers from traveling at higher speeds while they traveled through a short no-passing zone. The conclusion urged by the Department is simply not supported by the facts in this record.

The Department also relies upon Officer Polasky's characterization of Salter's driving as "erratic" to support a reasonable and articulable suspicion of a violation. When asked to explain what was "erratic" about Salter's driving, Officer Polasky could point only to the slow speed impeding traffic and slight weaving within the lane. It is clear that the characterization of Salter's driving as "erratic" was a mere conclusory statement of the officer, and did not add to the mix any new fact supporting the stop.

An officer must have a reasonable and articulable suspicion that a law has been or is being violated to stop a moving vehicle for investigation. *McNamara, supra,* 500 N.W.2d at 587; *State v. Guthmiller,* 499 N.W.2d 590, 592 (N.D.1993). Although we have recognized that the concept of reasonable suspicion is not readily reduced to a neat set of legal rules, it does require more than a "mere hunch." *State v. Sarhegyi,* 492 N.W.2d 284, 286 (N.D.1992). An investigative stop of a moving vehicle must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and mere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice. *Guthmiller, supra,* 499 N.W.2d at 592; *Sarhegyi, supra,* 492 N.W.2d at 286.

The facts in this record suggest a "mere hunch" of illegal activity; they do not support the hearing officer's conclusion that Officer Polasky had a reasonable and articulable suspicion that Salter had committed a violation. Accordingly, we affirm the judgment of the district court reversing the suspension of Salter's driving privileges.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.