2014 ND 153

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Jesse Lee RAHIER, Defendant and Appellee.**

**Nos. 20140004, 20140041.**

Supreme Court of North Dakota.

July 17, 2014.

Thomas A. Gehrz, Assistant Stark County State's Attorney, Dickinson, ND, for plaintiff and appellant.

Tatum O'Brien Lindbo, Fargo, ND, for defendant and appellee.

McEVERS, Justice.

[¶ 1] The State appeals from the district court's orders granting Jesse Lee Rahier's motions to suppress evidence. We affirm, concluding there was sufficient competent evidence to support the district court's decision that the arresting law enforcement officer lacked reasonable and articulable suspicion to stop Rahier, and the district court's decisions do not go against the manifest weight of the evidence.

I

[¶ 2] On May 20, 2013, Stark County Sheriff's Deputy Ray Kaylor stopped Rahier's vehicle and, subsequently, arrested him for carrying a concealed weapon, hindering law enforcement, and disorderly conduct. Rahier moved to suppress evidence alleging the law enforcement officer lacked reasonable and articulable suspicion, in violation of the Fourth Amendment to the United States Constitution. Rahier claimed the law enforcement officer's discovery of a concealed weapon was the result of an illegal search and should be suppressed. The State opposed the motions to suppress. The district court held an evidentiary hearing on the motions.

[¶ 3] At the hearing, the State presented testimony of several law enforcement officers who testified as to the events lead-

ing up to and during Rahier's stop and subsequent arrest. The testimony revealed that Deputy Kaylor received a call from Stark County Sheriff's Sergeant David Wallace for assistance in Belfield, North Dakota. Deputy Kaylor met with Sergeant Wallace, and two other law enforcement officers, at the Cenex Super-Pumper in Belfield. Deputy Kaylor was informed that a green Volkswagen Jetta had circled, eight times, a two-block area where law enforcement officers reside. He was also informed the Volkswagen Jetta flashed its high-beam headlights at a patrol car and, immediately after, a person ran past the patrol car. The law enforcement officers decided to stop the vehicle if it circled the two-block area again. Deputy Kaylor observed the Volkswagen Jetta again circle the area and initiated a traffic stop. The driver of the vehicle was Rahier, accompanied by a female passenger. Deputy Kaylor requested a driver's license, which Rahier provided. Stark County Sheriff's Deputy Solz arrived, after which Deputy Kaylor asked Rahier for the vehicle registration and proof of insurance. Rahier opened the glove box to retrieve the registration, and Deputy Solz observed a gun in the glove box. The gun belonged to Rahier, and he did not have a concealed weapons permit. The vehicle was owned by the female passenger, and the vehicle was not properly displaying license plates, which was discovered after the stop was initiated. Rahier was arrested for carrying a concealed weapon and later charged with disorderly conduct and hindering law enforcement.

[¶ 4] Belfield Police Sergeant Travis Carlson testified he observed the Volkswagen Jetta following him and slowly circling the area where law enforcement officers reside eight times in approximately one hour. Sergeant Carlson testified he contacted Belfield Police Chief Nicky Barnhard, who directed him to seek assis-tance from the Stark County Sheriff's Office. The record does not reflect Deputy Kaylor was aware of the time frame of the vehicle circling eight times in an hour.

[¶ 5] Chief Barnhard testified to the following: (1) he was not on duty and did not attend the meeting at the Cenex SuperPumper; (2) he was at his residence where he observed the Volkswagen Jetta slowly circle his home twelve times in one hour; (3) the Volkswagen Jetta had followed patrolling Belfield police officers; (4) the vehicle would harass law enforcement officers during traffic stops; (5) in mid to late April 2013, at approximately 3:30 a.m., a fire destroyed a police vehicle in front of his house, and he suspected arson; and (6) in late April or early May 2013, at approximately 2:30 a.m., someone pounded on his bedroom window. The record does not reflect Deputy Kaylor was aware of any of this information prior to making the traffic stop.

[¶ 6] Sergeant Wallace testified that Sergeant Carlson had contacted him regarding "a vehicle that was following him around on patrol, stopping at any traffic stops that he made, getting out and recording him on the stops and also driving past law enforcement housing in Belfield multiple times." The record does not reflect this information was known to Deputy Kaylor at the time of the stop.

[¶ 7] The district court granted Rahier's motion to suppress on the grounds that Deputy Kaylor did not have reasonable and articulable suspicion justifying the stop of Rahier's vehicle. The State appealed and filed its statement of prosecuting attorney, in accordance with N.D.C.C. § 29–28–07(5). The State argues the appeal is not taken for the purpose of delay and the suppressed evidence is substantial proof of a fact material in the proceeding.

[¶ 8] The State argues the district court erred in finding Deputy Kaylor did not have reasonable and articulable suspicion to stop Rahier. The State claims the evidence in the record supports a finding that Deputy Kaylor had reasonable and articulable suspicion that a motorist had violated or was violating the law.

## II

[¶ 9] Under N.D.C.C. § 29–28–07, the prosecution's right to appeal in a criminal case is strictly limited. *State v. Emil*, 2010 ND 117, ¶ 5, 784 N.W.2d 137. An order suppressing evidence may be appealed by the State if the appeal is "accompanied by a statement of the prosecuting attorney asserting that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." N.D.C.C. § 29–28–07(5). The prosecuting attorney's "statement should not merely paraphrase the requirements of N.D.C.C. § 29–28–07(5)," and the prosecution must support its appeal "with an explanation of the relevance of the suppressed evidence." *Emil*, at ¶ 6. If the prosecution merely paraphrases the language of N.D.C.C. § 29–28–07(5) and fails to provide an explanation, "this Court may still consider the State's appeal where a review of the facts clearly demonstrates the relevance of the evidence suppressed." *Emil*, at ¶ 6.

[¶ 10] The State filed its notice of appeal with a statement of the prosecuting attorney, under N.D.C.C. § 29–28–07(5). The prosecuting attorney asserted in the statement that to prove the charges against Rahier the suppressed evidence was substantial proof of a fact material in the proceedings and without the suppressed evidence, the State has no evidence. The prosecuting attorney's statements are more than simply paraphrasing the requirements of N.D.C.C. § 29–28–07(5) and provided adequate explanation of the relevance of the suppressed evidence. In addition, the record clearly demonstrates the relevance of the suppressed evidence.

[¶ 11] The applicable standard of review of a district court's decision to grant or deny a motion to suppress evidence is well established.

A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. We do not conduct a de novo review. We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact.

*State v. Whitman*, 2013 ND 183, ¶ 20, 838 N.W.2d 401. "Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law." *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. "Although the underlying factual disputes are findings of fact, whether the findings meet a legal standard, in this instance a reasonable and articulable suspicion, is a question of law." *State v. Wolfer*, 2010 ND 63, ¶ 5, 780 N.W.2d 650.

[¶ 12] "Investigatory traffic stops are valid when the officer conducting the stop had a reasonable and articulable suspicion the motorist has violated or is violating the law." *Wolfer*, 2010 ND 63, ¶ 6, 780 N.W.2d 650. This Court has previously discussed situations that provide a law enforcement officer with reasonable and articulable suspicion for an investigatory stop:

(1) when the officer relied upon a directive or request for action from another officer; (2) when the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) when the officer directly observed illegal activity.

*City of Dickinson v. Hewson*, 2011 ND 187, ¶ 9, 803 N.W.2d 814. The information the officer relies upon to conduct an investigatory stop, whether it be from another officer or an informant, must provide him with reasonable and articulable suspicion that the motorist has violated or is violating the law. *Id.* at ¶¶ 8–14; *State v. Torkelsen*, 2006 ND 152, ¶ 12, 718 N.W.2d 22.

[¶ 13] We have recognized that circumstances may arise when conduct, even though completely lawful, "might justify the suspicion" that criminal activity is underway. *Kappel v. Dir., N.D. Dep't of Transp.*, 1999 ND 213, ¶ 10, 602 N.W.2d 718. Reasonable and articulable suspicion requires more than "a mere hunch illegal activity is taking place." *Id.* at ¶ 7. "Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that is evaluated under an objective standard considering the totality of the circumstances." *Wolfer*, 2010 ND 63, ¶ 6, 780 N.W.2d 650. The determination this Court must make is whether a reasonable person in the officer's position would be "justified by some objective manifestation" to believe that the person stopped had engaged in, or was about to be, engaged in criminal activity. *State v. Mohl*, 2010 ND 120, ¶ 7, 784 N.W.2d 128. In assessing the reasonableness of an officer's traffic stop to investigate, this Court takes into account the inferences and deductions that an officer would make. *Kappel*, at ¶ 8. An officer's inferences and deductions, drawn from experience and training, are considered when determining whether the circumstances "create a reasonable suspicion of potential criminal activity." *Id.*

[¶ 14] In its orders granting Rahier's motions to suppress, the district court observed "that the existence of the recent incidents of vandalism, coupled with the evidence that the ... [Volkswagen] Jetta had circled Belfield police personnel homes 8–12 times in an hour at slow speeds and had been following and recording Belfield officers as they conducted stops would establish reasonable suspicion." However, the district court found that "there was no testimony indicating that the prior incidents of vandalism were known to, or considered as a basis for the stop by, the officers who 'collectively' determined to stop the vehicle." The district court concluded that Deputy Kaylor, at the time the stop was initiated, did not have reasonable and articulable suspicion.

[¶ 15] This Court has articulated the concept of imputation of knowledge from one law enforcement officer to another.

In order for knowledge to be imputed from one officer to another, however, the information must actually be communicated to the acting officer in advance of the police action. *[State v.] Miller*, 510 N.W.2d [638,] 643 [ (N.D. 1994) ] ("Information held by other officers but not communicated to the acting officer is not imputed to the acting officer."). The communication requirement prevents unjustified police action from being taken in the hopes it is later validated by tallying the knowledge of every officer and agency involved in the case. *See State v. Mickelson*, 18 Or.App. 647, 526 P.2d 583, 584 (1974); *see, e.g., Salter v. State*, 163 Ind.App. 35, 321 N.E.2d 760, 762 (1975) (finding arrest improper when evidence could not demonstrate that officer possessing knowledge estab-

lishing probable cause communicated with the arresting officer prior to arrest).

*City of Minot v. Keller*, 2008 ND 38, ¶ 12, 745 N.W.2d 638. As the district court noted, there is no evidence in the record that Deputy Kaylor was aware of the prior incidents of vandalism. The record does not reflect Deputy Kaylor was aware of: (1) the time frame for when the area was circled eight times; (2) the Volkswagen Jetta was driving around the area at a slow pace; (3) the regularity of similar instances of circling of law enforcement housing; (4) the following of patrolling Belfield police officers; and (5) the recording and disrupting of Belfield police officers' traffic stops. Deputy Kaylor testified he observed the Volkswagen Jetta circling the area and made the stop based on the information shared with him that the Volkswagen Jetta had circled an area where law enforcement officers reside eight times; and another law enforcement officer's parked patrol vehicle was flashed by the Volkswagen Jetta's high-beam headlights after the vehicle past him and turned around, and an individual ran past the patrol vehicle. Based on the record, there is nothing to support imputation of information known by other law enforcement officers but not relayed to Deputy Kaylor.

[¶ 16] This Court has never determined whether a vehicle circling an area for no apparent reason or a seemingly innocent reason provides law enforcement officers with reasonable and articulable suspicion. We are persuaded by the district court's reasoning that law enforcement officers may have reasonable and articulable suspicion when a vehicle is stopped for circling an area, for no apparent reason or for seemingly innocent reasons, when the circling is coupled with some other additional factor that indicates criminal activity is afoot. In *United States v. Soto*, 375 F.3d 1219, 1222–23 (10th Cir. 2004), the Tenth Circuit Court of Appeals held a vehicle's circling a parking lot, for no apparent reason, suggested counter-surveillance linked to criminal activity. The vehicle's circling, under the totality of the circumstances, rose to probable cause because the circling activity was connected to the activity of another vehicle and neither vehicle conducted business at the gas station in which they were parked. *Id.* In *United States v. Askew*, 403 F.3d 496, 507–08 (7th Cir.2005), the Seventh Circuit Court of Appeals held a vehicle's slow circling in a parking lot suggested criminal activity. The vehicle's circling, under the totality of the circumstances, rose to reasonable and articulable suspicion because the law enforcement officers had been informed Askew intended to commit a crime. *Id.* The court explained "[a]lthough circling a parking lot looking for someone is most certainly an innocent act, we have acknowledged that a pattern of behavior interpreted by the untrained observer as innocent may justify a valid investigatory stop when viewed collectively by experienced drug enforcement agents." *Id.* at 508. Here, Deputy Kaylor's testimony did not include his reasoning, based on his training and experience, why the Volkswagen Jetta circling a two-block area eight times, where law enforcement officers reside, provided him with reasonable and articulable suspicion that criminal activity was afoot.

[¶ 17] In *State v. Westmiller*, 2007 ND 52, 730 N.W.2d 134, this Court held a law enforcement officer had reasonable suspicion to stop a driver that flashed her high-beam headlights. In *Westmiller*, the law enforcement officer had reasonable suspicion the driver had violated N.D.C.C. § 39–21–21, which prohibits the use of high-beam headlights within five hundred feet of an oncoming motor vehicle. *West-*

*miller*, at ¶ 14. Deputy Kaylor's testimony makes it clear he did not initiate a traffic stop because the Volkswagen Jetta flashing its high-beam headlights constituted a traffic violation under N.D.C.C. § 39–21–21. As the district court recognized "[a]ll of the witnesses ... testified that they did not observe any traffic violations by [the Volkswagen Jetta], and the stop was not stopped on the basis of any violation of statute or driving offense." Deputy Kaylor failed to articulate in his testimony why the Volkswagen Jetta flashing its high-beam headlights provided him with reasonable and articulable suspicion. There is no explanation as to why a traffic stop was not initiated immediately after the Volkswagen Jetta flashed its high-beam headlights at the patrol car.

[¶ 18] Deputy Kaylor testified that he initiated the traffic stop because he observed the Volkswagen Jetta circle the housing of law enforcement officers; he had been informed by other law enforcement officers that the Volkswagen Jetta had circled the housing of law enforcement officers eight times; and when a law enforcement officer had parked his patrol vehicle, the Volkswagen Jetta drove past him, turned around, flashed its high-beam headlights on the patrol vehicle, and an individual ran past the patrol vehicle. This information alone did not provide Deputy Kaylor with a reasonable and articulable suspicion that criminal activity was afoot.

### III

[¶ 19] We affirm the district court's decision that the arresting law enforcement officer lacked reasonable and articulable suspicion to stop Rahier due to sufficient competent evidence supporting the decisions and the decisions do not go against the manifest weight of the evidence.

[¶ 20] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.