# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2020 ND 123

State of North Dakota,                                    Plaintiff and Appellant

    v.

Jordan Selzler a/k/a Jordan Selzer,              Defendant and Appellee

### No. 20190355

State of North Dakota,                                    Plaintiff and Appellant

    v.

Kelsey A. Jankowski,                                       Defendant and Appellee

### No. 20190357

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Ladd R. Erickson, State's Attorney, Washburn, ND, for plaintiff and appellant; submitted on brief.

William R. Thomason, Bismarck, ND, for defendant and appellee Jordan Selzler a/k/a Jordan Selzer; submitted on brief.

Robert N. Quick, Bismarck, ND, for defendant and appellee Kelsey A. Jankowski; submitted on brief.

## State v. Selzler; State v. Jankowski

## Nos. 20190355 & 20190357

**Jensen, Chief Justice.**

[¶1]   The State of North Dakota appeals from the suppression of evidence in criminal proceedings initiated against Jordan Selzler and Kelsey Jankowski. The criminal charges against Selzler and Jankowski arise from evidence gathered during the same traffic stop, the hearing on the motions to suppress evidence was held jointly, and the cases have been consolidated for purposes of this appeal.   The State argues the district court incorrectly found the traffic stop was unlawful because law enforcement lacked reasonable suspicion for the stop.   We affirm the suppression of the evidence gathered after the traffic stop.

I

[¶2]   At approximately 3:00 a.m. on May 1, 2019, a McLean County Deputy Sheriff was completing paperwork while parked in the lot of a gas station and convenience store where the gas pumps were still legally accessible, but the facility itself was closed.   Jankowski was the passenger in a vehicle that drove into the lot and pulled up to the pumps.   Jankowski exited the vehicle and walked toward the closed convenience store.   After watching Jankowski walk toward the building, the deputy resumed working on his report.

[¶3]   The deputy decided to inquire if Jankowski was alright after she had remained by the building for about five to ten minutes.   The deputy drove his vehicle up to Selzler and Jankowski's vehicle.   Upon reaching Jankowski and Selzler's vehicle, the deputy observed Selzler sitting in the driver's seat.   At about the same time, Jankowski quickly walked back to Selzler and Jankowski's vehicle.   The deputy believed both Selzler and Jankowski were exhibiting nervous behavior.   In response to the deputy's inquiry if everything was alright, Jankowski replied that she was making a phone call.   The deputy considered her answer suspicious because she was not holding a phone.   The deputy drove a short distance away, but remained in a location where he could observe Selzler and Jankowski's vehicle.

1

[¶4] After what the deputy considered "quite some time," Selzler and Jankowski left the gas station. As they left the gas station their vehicle accelerated quickly, causing the front of the vehicle to visibly rise up. Their vehicle then made what the deputy described as a "hard brake" at a stop sign. After stopping, the vehicle paused briefly, signaled to turn, paused briefly again, and then proceeded onto the adjacent highway. The deputy did not believe the length of pauses were necessary because of the lack of traffic on the highway.

[¶5] The deputy followed Selzler and Jankowski's vehicle and initiated a traffic stop. The deputy did not observe any traffic violations. During the hearing on the motion to suppress the State argued the deputy had some "indication of some offense potentially happening, we don't know what." The State also argued the deputy had a belief "[t]here's some violation of law happening." The deputy indicated the traffic stop was initiated after he observed the suspicious reactions of Selzler and Jankowski when he approached their vehicle, their presence at the gas station at 3:00 a.m., Jankowski's statement she was making a phone call when no phone was visible, the odd (but lawful) driving behavior when the vehicle left the gas station, and the fact the gas cap on the vehicle remained open after they left the gas station.

[¶6] The court granted the motions and suppressed evidence seized subsequent to the traffic stop. The court found the stop to be invalid because the deputy did not have a reasonable and articulable suspicion Selzler or Jankowski had violated or were about to violate the law. The State asserts the district court erred in suppressing the evidence seized after the traffic stop.

II

[¶7] A valid investigatory traffic stop requires the officer conducting the stop to have "a reasonable and articulable suspicion the motorist has violated or is violating the law." *State v. Bornsen*, 2018 ND 256, ¶ 5, 920 N.W.2d 314 (quoting *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 9, 720 N.W.2d 433). "Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that 'is evaluated under an objective standard considering the totality

of the circumstances.'" *Id.* "The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *State v. Asbach*, 2015 ND 280, ¶ 12, 871 N.W.2d 820. "The determination of whether the facts in a case support a reasonable suspicion is a question of law which is fully reviewable on appeal." *Bornsen,* at ¶ 5 (citing *City of Dickinson v. Hewson*, 2011 ND 187, ¶ 6, 803 N.W.2d 814). We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D. 1994).

[¶8] "Although we have recognized that the concept of reasonable suspicion is not readily reduced to a neat set of legal rules, it does require more than a 'mere hunch.'" *Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 114 (N.D. 1993) (internal quotations omitted). "An investigative stop of a moving vehicle must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and mere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice." *Id.*

[¶9] This Court has recognized traffic violations, regardless of how minor, provide a lawful basis for a traffic stop. *Bornsen*, 2018 ND 256, ¶ 6, 920 N.W.2d 314 (affirming a judgment entered after the denial of a motion to suppress where the traffic stop was initiated after the observation of a minor traffic violation). We have also recognized the validity of a traffic stop in the absence of a traffic violation and where the law enforcement officer's observations have been limited to lawful activity, when the officer has articulated suspicion of a particular unlawful activity. *Kappel v. Director, N.D. Dep't of Transp.*, 1999 ND 213, ¶ 19, 602 N.W.2d 718 (a prolonged stop at a traffic sign and weaving within the driver's lane of traffic were not unlawful, but officer articulated he suspected the driver of driving while under the influence based on the driving behavior and his prior experience). In *Kappel*, the law enforcement officer articulated that his observations of the driving behavior, although lawful, coupled with his experience which included approximately 160 prior driving while under the influence arrests, led him to suspect the driver was engaged in the unlawful act of driving while under the influence. *Id.* at ¶ 11. We have

3

however recognized a traffic stop may be invalid in the absence of a traffic violation when the officer does not have reasonable suspicion of unlawful activity. *Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 114 (N.D. 1993). In *Salter*, the law enforcement officer's observation of the driver driving slower than the speed limit and making slight weaves within the lane, did not support a reasonable suspicion that the driver was impeding traffic, and the officer's characterization of the driving as erratic did not provide additional justification. *Id.*

[¶10] The court found the deputy did not have reasonable, articulable suspicion sufficient to justify the stop of Selzler and Jankowski's vehicle. The court found the facts and testimony presented at the hearing suggested the deputy had a "mere hunch" of illegal activity. The court noted neither Selzler nor Jankowski had done anything unlawful and, even when considering the totality of the circumstances, there was nothing more than a mere hunch criminal activity was afoot. In reaching its finding, the court noted the State had not articulated or demonstrated any clear reasonable suspicion.

[¶11] The court specifically inquired about what potential criminal activity the deputy suspected Selzler and Jankowski were engaging in. The State argued the deputy had some "indication of some offense potentially happening, we don't know what" and also argued the deputy had a belief "[t]here's some violation of law happening." The deputy had already approached the vehicle at the gas station and did not initiate a stop. The vehicle subsequently left the gas station, and although suspicious driving was observed, no traffic violations were observed. What potential criminal activity was suspected is not self-evident from the record. Under the circumstances of this case, the failure to articulate even a general category of potential criminal activity Selzler and Jankowski may have been engaged in leads us to the conclusion there is sufficient competent evidence in the record to support the court's decision, and the court's decision does not go against the manifest weight of the evidence.

III

[¶12] The district court's finding the traffic stop was unlawful because law enforcement lacked reasonable suspicion for the stop is supported by sufficient

4

competent evidence and does not go against the weight of the evidence. We affirm the district court's order granting Selzler and Jankowski's motions to suppress evidence subsequent to the traffic stop of their vehicle.

[¶13] Jon J. Jensen, C.J.
Lisa Fair McEvers
Gerald W. VandeWalle
Jerod E. Tufte
Daniel J. Crothers