# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2021 ND 194

State of North Dakota,                                    Plaintiff and Appellee

     v.

Benjamin Dean Suelzle,                              Defendant and Appellant

### No. 20210028

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Kelly J. Moe, Assistant State's Attorney, Watford City, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Benjamin Suelzle appeals from a judgment entered following a jury verdict finding him guilty of one count of being in actual physical control of a motor vehicle while under the influence in violation of N.D.C.C. § 39-08-01(1)(b) and one count of refusal to submit to blood alcohol testing in violation of N.D.C.C. § 39-08-01(1)(e)(2). Suelzle argues the district court erred in denying his motion to suppress evidence and dismiss the charges because the federal law enforcement officer who stopped his vehicle lacked reasonable and articulable suspicion that Suelzle had violated or was about to violate the law, and was without authority to detain him for the purpose of waiting for a McKenzie County law enforcement officer to arrive at the scene. We affirm the judgment.

I

[¶2]   Suelzle was stopped within the exterior boundaries of the Fort Berthold Indian Reservation by a federal law enforcement officer who was working for the tribal drug enforcement agency. Following the stop, Suelzle was asked if he was an enrolled member of a recognized tribe and he responded he was not. Suelzle was thereafter detained by the federal law enforcement officer until a McKenzie County law enforcement officer arrived on the scene. Suelzle was ultimately charged in North Dakota State District Court for McKenzie County with the offenses of being in actual physical control of a motor vehicle while under the influence and refusing to submit to blood alcohol testing.

[¶3]   Suelzle filed a motion to suppress and dismiss the charges. Suelzle argued the federal law enforcement officer lacked reasonable suspicion for the stop and the state officer that subsequently arrived lacked jurisdiction to arrest him on the reservation.

[¶4]   At the hearing on the motion to suppress and dismiss, the federal officer testified as follows:

> [I] overheard a call dispatch advised of a possibly intoxicated driver traveling westbound on Highway 23.
>
> .    .    .
>
> Information that was given was license plate was 6-4-6 Adam-David-King and that it was on a white truck. They did not give a make or model.

[¶5] The federal law enforcement officer further testified she noticed the vehicle matching the description going westbound in front of her at about 1:35 a.m. and provided the following additional testimony:

> The vehicle swerved over the white fog line and the yellow center line multiple times. And around that time dispatch advised that the license plate that the vehicle was bearing was coming back as expired.

During the hearing, the federal law enforcement officer also indicated the dash cam videos were accurate depictions of what she observed that night.

[¶6] After making the above observations, the federal law enforcement officer initiated a stop of Suelzle's vehicle. Because the stop occurred within the exterior boundaries of the Fort Berthold Indian Reservation, Suelzle was asked if he was a member of a federally recognized tribe. Suelzle responded no and the federal law enforcement officer contacted the McKenzie County Sheriff "[b]ecause of the indicators that I saw that he was possibly impaired and he was non-enrolled." The federal law enforcement officer acknowledged she had no authority to arrest Suelzle, a non-Indian, on the reservation.

[¶7] The federal law enforcement officer later learned the registration on Suelzle's vehicle was not expired and the license plate numbers she was provided were not the same as in dispatch's call notes. When asked about the expired registration, she testified as follows:

> A. I usually confirm the license plate through my own computer, but had already logged out of everything on my laptop. At this point, based off of the call that was given to me, and what was aired

over the radio, and based off my observations of him driving, I felt there was no reason to confirm the license plate.

. . .

Q. Okay. So you didn't investigate the license plate at all; did you.
A. No.

[¶8] The district court denied Suelzle's motion to suppress and dismiss. The case proceeded to trial and Suelzle was convicted of one count of being in actual physical control of a motor vehicle while under the influence in violation of N.D.C.C. § 39-08-01(1)(b) and one count of refusal to submit to blood alcohol testing in violation of N.D.C.C. § 39-08-01(1)(e)(2). Suelzle appeals from the judgment, asserting the court erred in denying his motion to suppress and dismiss.

II

[¶9] Suelzle asserts the federal law enforcement officer did not have reasonable and articulable suspicion to initiate a traffic stop as required by the Fourth Amendment. Our standard of review is well established:

When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. . . . While the underlying factual disputes are findings of fact, whether the findings support a reasonable and articulable suspicion presents a question of law which is fully reviewable on appeal.

*State v. James*, 2016 ND 68, ¶ 5, 876 N.W.2d 720 (internal citations omitted).

[¶10] "Under the Fourth Amendment of the United States Constitution, police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot." *Anderson v. Dir., N.D. Dep't of Transp.*, 2005 ND 97, ¶ 8, 696 N.W.2d 918 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Law enforcement must have a

3

reasonable and articulable suspicion a motorist has violated or is violating the law to stop the vehicle. *City of Dickinson v. Hewson*, 2011 ND 187, ¶ 8, 803 N.W.2d 814. "Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that 'is evaluated under an objective standard considering the totality of the circumstances.'" *Id.* (quoting *State v. Wolfer*, 2010 ND 63, ¶ 6, 780 N.W.2d 650). "The ultimate issue is whether a reasonable person in the officer's position would have been justified in stopping the vehicle because of some objective manifestation to suspect potential criminal activity." *Interest of T.J.K.*, 1999 ND 152, ¶ 8, 598 N.W.2d 781.

[¶11] This Court has been repeatedly asked to consider whether a vehicle being driven in a manner that causes it to weave within its own lane creates a sufficient reasonable and articulable suspicion to initiate a traffic stop. *See e.g.*, *James*, 2016 ND 68, ¶ 8; *Kappel v. Dir., N.D. Dep't of Transp.*, 1999 ND 213, ¶¶ 10-16, 602 N.W.2d 718. In *Zimmerman v. North Dakota Department of Transportation*, we held a reasoning mind could have concluded that the driver committed a traffic violation by crossing the center line. 543 N.W.2d 479, 482 (N.D. 1996). In *State v. VandeHoven*, we concluded weaving provided a sufficient basis to create an articulable and reasonable suspicion that the driver was violating the law. 388 N.W.2d 857, 859 (N.D. 1986). In *State v. Dorendorf*, we held the officers had the requisite reasonable suspicion to stop the vehicle after observing the vehicle weaving within its own lane of traffic. 359 N.W.2d 115, 116-17 (N.D. 1984). By contrast, "slight" or "minimum" weaving does not justify a traffic stop. *See Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 113-14 (N.D. 1993).

[¶12] After hearing the testimony and reviewing a video of the traffic stop, the district court made the following findings:

> It appeared to me that at one point at the start of the video that the center line—the tire was either on or crossed over it. . . . I do believe that where [sic] the vehicle was [sic] violated the laws as far as maintaining that particular lane control.
>
> I did also notice another time prior to the initiation of the stop where the vehicle did—was on the right-hand either on or crossed

4

the right-hand fog line. Again in violation of the law. It was only after noticing at least these two violations did the officer initiate the stop. And I do believe the officer was justified in initiating the stop at that juncture. . . . So as far as [sic] suppression based on the stop is denied.

[¶13] Under our standard of review, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We conclude there is sufficient competent evidence to support the denial of the motion to suppress as it relates to whether the federal law enforcement officer had a reasonable and articulable suspicion to stop Suelzle's vehicle, and the decision does not go against the manifest weight of the evidence.

### III

[¶14] Suelzle contends the federal law enforcement officer did not have authority to seize him and hold him until the McKenzie County law enforcement officer arrived. The United States Supreme Court has recently answered the question of "whether an Indian tribe's police officer has authority to detain temporarily and to search a non-Indian on a public right-of-way that runs through an Indian reservation." *United States v. Cooley*, 141 S.Ct.1638, 1641 (2021).

[¶15] In *Cooley*, the tribal officer stopped a man who appeared to be non-Native, observed "watery, bloodshot eyes," and called tribal and county officers for assistance. 141 S.Ct. at 1642. The officers, including a federal agent, directed the tribal officer to detain the man at the tribal station, where the federal and local officers questioned the man. *Id*. The Supreme Court noted the inherent power of a tribe to "exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. (quoting *Montana v. United States*, 450 U.S. 544, 566 (1981)) (emphasis omitted). The Supreme Court went on to state:

> The second exception we have just quoted fits the present case, almost like a glove. The phrase speaks of the protection of the "health or welfare of the tribe." To deny a tribal police officer

5

authority to search and detain for a reasonable time any person he or she believes may commit or has committed a crime would make it difficult for tribes to protect themselves against ongoing threats. Such threats may be posed by, for instance, non-Indian drunk drivers, transporters of contraband, or other criminal offenders operating on roads within the boundaries of a tribal reservation. As the Washington Supreme Court has noted, "[a]llowing a known drunk driver to get back in his or her car, careen off down the road, and possibly kill or injure Indians or non-Indians would certainly be detrimental to the health or welfare of the Tribe."

*Cooley*, 141 S.Ct. at 1643 (citations omitted). Thereafter, the Supreme Court held the tribal officer could detain the non-Indian under the tribe's inherent authority. *Id.* at 1644.

[¶16] We see no relevant distinctions between this case and *Cooley*. In light of the Supreme Court's decision in *Cooley*, we conclude the federal law enforcement officer working as an agent for the tribal drug enforcement agency had jurisdiction to detain Suelzle for a reasonable time while awaiting a state officer and affirm the district court's denial of his motion to suppress related to his detention by the federal law enforcement officer.

IV

[¶17] The district court did not err in finding the federal law enforcement officer had a reasonable and articulable suspicion to initiate a traffic stop of Suelzle's vehicle. The court did not err in finding Suelzle could be detained by the federal law enforcement officer for a reasonable amount of time while waiting for the McKenzie County law enforcement officer to arrive. We affirm the judgment.

[¶18] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

6